ELEVENTH CIRCUIT DOCKET NO. 15-13871-A
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
_____

In Re CHECKING ACCOUNT OVERDRAFT LITIGATION:

RBC BANK (USA),

Defendant/Appellant,

v.

MICHAEL DASHER,

Plaintiff/Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT FOR
THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION
THE HONORABLE JAMES LAWRENCE KING
_____

**BRIEF OF APPELLEE**
_____

Aaron S. Podhurst
Florida Bar No. 063606
PODHURST ORSECK, PA
25 W. Flagler Street
Suite 800
Miami, Florida 33130
(305) 358-2800
(305) 358-2382 (facsimile)

Bruce S. Rogow
Florida Bar No. 067999
BRUCE S. ROGOW, PA
100 NE 3rd Ave
Suite 1000
Fort Lauderdale, Florida 33301
(954) 767-8909
(954) 764-1530 (facsimile)

*Co-Lead Counsel for Plaintiff/Appellee*
*(Additional Counsel Listed on Signature Page)*

*RBC Bank (USA) v. Michael Dasher*
11th Circuit Docket Number 15-13871-A

## <u>CERTIFICATE OF INTERESTED PERSONS<br>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellee hereby certifies that Appellant RBC Bank (USA)'s Certificate of Interested Persons and Corporate Disclosure Statement contained in the Brief of Appellant filed on October 13, 2015 is complete and accurate except to add the following as additional Counsel for Appellee:

Rosenthal, Stephen F., Counsel for Appellee

DATED this 3rd day of February, 2016.

Respectfully submitted,

BY:    */s/ E. Adam Webb*
E. Adam Webb
Georgia Bar No. 743910

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF CITATIONS .................................................................. iv

TABLE OF RECORD REFERENCES ............................................. viii

STATEMENT REGARDING ORAL ARGUMENT ............................................x

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE...........................................................2

      I.      Factual Background........................................................2

             A.      Overdraft Practices in General................................................2

             B.      Facts Regarding Plaintiff Dasher ...............................................4

             C.      The RBC Account Agreement ..................................................5

             D.      PNC Acquires RBC and Changes the Account Agreement........................................................6

             E.      The PNC Account Agreement .................................................8

      II.     Brief Procedural History ...................................................8

STANDARD OF REVIEW ......................................................11

SUMMARY OF THE ARGUMENT ..................................................12

ARGUMENT ..................................................................13

      I.      The District Court Correctly Held That RBC Waived Enforcement of the 2013 PNC Arbitration Clause ...........................13

A.    RBC Acted Inconsistently With an Intent to Arbitrate Under the 2013 Agreement by Sleeping on Those Rights and Continuing to Litigate Over the Repealed Arbitration Clause. ...............................................14

B.    RBC's Actions Prejudiced Mr. Dasher...................................24

C.    RBC's Delay Supports a Finding of Waiver .........................27

D.    The Filing of a Consolidated Amended Complaint Did Not Revive RBC's Arbitration Rights ............................28

II.    The District Court Correctly Found that PNC Cannot Unilaterally Add Arbitration to its Agreement ................................33

A.    PNC/RBC Cannot Add a Material Contractual Provision ..................................................................................33

B.    RBC's Judicial Estoppel Argument Fails ..............................41

CONCLUSION .....................................................................................................42

## TABLE OF AUTHORITIES

*Abdullah v. Duke Univ. Health Sys.*,
  2009 WL 1971622 (E.D.N.C. July 8, 2009)............................................40, 41

*Access Now, Inc. v. Southwest Airlines, Co.*,
  385 F.3d 1324 (11th Cir. 2004) ...................................................................24

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................9, 18

*Badie v. Bank of Am.*,
  79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998)...........................................34, 35

*Barras v. BB&T Co.*,
  685 F.3d 1269 (11th Cir. 2012) ........................................................ *passim*

*Becker v. David*,
  491 F.3d 1291 (11th Cir. 2007) ..................................................................11

*Betts v. SGE Mgmt., LLC*,
  402 Fed. App'x 475 (11th Cir. 2010) ....................................................39, 40

*Birmingham Steel Corp. v. Tenn. Valley Auth.*,
  353 F.3d 1331 (11th Cir. 2003) ..................................................................21

*Cosey v. Prudential Ins. Co. of Am.*,
  735 F.3d 161 (4th Cir. 2013) ......................................................................38

*Cunningham v. Fleetwood Homes of Ga., Inc.*,
  253 F.3d 611 (11th Cir. 2001) ....................................................................11

*Davis v. Southern Energy Homes, Inc.*,
  305 F.3d 1268 (11th Cir. 2002) ..................................................................11

*Discover Bank v. Shea*,
  827 A.2d 358 (N.J. Super. Ct. Law Div. 2001)...........................................34

*Doe v. Princess Cruise Lines, Ltd.*,
  657 F.3d 1204 (11th Cir. 2011) ............................................................20, 21

iv

*Drew Estate Holding Co. v. Fantasia Distribution, Inc.*,
   539 Fed. App'x 998 (11th Cir. 2013) ........................................................17

*Estate of Myhra v. Royal Caribbean Cruises, Ltd.*,
   695 F.3d 1233 (11th Cir. 2012) ........................................................39, 40

*Follman v. World Fin. Network Nat'l Bank*,
   721 F. Supp. 2d 158 (E.D.N.Y. 2010)................................................33, 34

*Frances Hoisery Mills, Inc. v. Burlington Indus., Inc.*,
   204 S.E.2d 834 (N.C. 1974) ..............................................................36, 42

*Garcia v. Wachovia Corp.*,
   699 F.3d 1273 (11th Cir. 2012) .............................................. 12, 13, 19, 24

*Goetsch v. Shell Oil Co.*,
   197 F.R.D. 574 (W.D.N.C. 2000) ......................................................40, 41

*Hough v. Regions Fin. Corp.*,
   672 F.3d 1224 (11th Cir. 2012) ........................................................ *passim*

*In re Checking Account Overdraft Litig.*,
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) ......................................................33

*In re Checking Account Overdraft Litig.*,
   915 F. Supp. 2d 1334 (S.D. Fla. 2013) ........................................................9

*In re Checking Account Overdraft Litig.*,
   2010 WL 3361127 (S.D. Fla. Aug. 23, 2010).............................................9

*Johnson v. KeyBank, N.A.*,
   754 F.3d 1290 (11th Cir. 2014) ........................................................ *passim*

*Krinsk v. SunTrust Banks, Inc.*,
   654 F.3d 1194 (11th Cir. 2011) .....................................................28, 29, 31

*Long v. Fidelity Water Sys., Inc.*,
   2000 WL 989914 (N.D. Cal. May 26, 2000) .............................................38

*Leight v. Osteosymbionics, LLC*,
   2016 WL 193511 (Ohio Ct. App. Jan. 14, 2016) ......................................35

*Maestle v. Best Buy Co.*,
   2005 WL 1907282 (Ohio Ct. App. Aug. 11, 2005) ....................................35

*Miller v. Randolph*,
   478 S.E.2d 667 (N.C. Ct. App. 1996) ........................................................32

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ...................................................................................25

*Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*,
   62 F.3d 1356 (11th Cir. 1995) ........................................................... *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................26

*Pendergast v. Sprint Nextel Corp.*,
   691 F.3d 1224 (11th Cir. 2012) ..........................................................39, 40

*Perry v. FleetBoston Fin. Corp.*,
   2004 WL 1508518 (E.D. Pa. July 6, 2004) ...............................................34

*Preferred Sites, LLC v. Troup County*,
   296 F.3d 1210 (11th Cir. 2002) .................................................................17

*Preston v. Ferrer*,
   552 U.S. 346 (2008)....................................................................................25

*Russell v. Citigroup, Inc.*,
   748 F.3d 677 (6th Cir. 2014) ........................................................18, 19, 37

*S&H Contractors, Inc. v. A.J. Taft Coal Co.*,
   906 F.2d 1507 (11th Cir. 1990) ....................................................13, 19, 27

*Schiavo v. Schiavo*,
   403 F.3d 1289 (11th Cir. 2005) ..........................................................11, 36

*Sears Roebuck & Co. v. Avery*,
   593 S.E.2d 424 (N.C. Ct. App. 2004) ........................................................34

vi

*Snow v. Citibank, N.A.*,
  2015 WL 799543 (E.D.N.C. Feb. 25, 2015) ........................................40, 41

*Stone v. Golden Wexler & Sarnese, P.C.*,
  341 F. Supp. 2d 189 (E.D.N.Y. 2004) ........................................................34

*Supak & Sons Mtg. Co. v. Pervel Indus., Inc.*,
  593 F.2d 135 (4th Cir. 1979) .............................................................36, 42

*This That and The Other Gift and Tobacco, Inc. v. Cobb County*,
  439 F.3d 1275 (11th Cir. 2006) .................................................................36

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
  925 F.2d 1136 (9th Cir. 1991) ...................................................................39

*Walker v. Jones*,
  10 F.3d 1569 (11th Cir. 1994) ...................................................................24

## TABLE OF RECORD REFERENCES IN BRIEF

| Docket No. | Document Name | Brief Page No. |
|---|---|---|
| R. 1 | Original Complaint (filed in Case No. 10-22190 (S.D. Fla.)) | 8, 30 |
| R. 1-1 | 2009 RBC Account Agreement | 32 |
| R. 5 | RBC's Motion to Compel Arbitration (filed in Case No. 10-22190 (S.D. Fla.)) | 9 |
| R. 5-1 | Declaration of S. Bauer (filed in Case No. 10-22190 (S.D. Fla.)) | 5 |
| R. 1670 | Stipulated Motion to Vacate | 18 |
| R. 2020-2 | Amended Declaration of M. Dasher | 4 |
| R. 3008 | Supplemental Brief in Opposition to RBC's Renewed Motion to Compel Arbitration | 16 |
| R. 3008-1 | Excerpts from Deposition of R. Ramsay | 7 |
| R. 3008-2 | March 2012 PNC Agreement | 6, 7 |
| R. 3008-8 | 2008 RBC Account Agreement | 6 |
| R. 3162 | Order Denying RBC's Renewed Motion to Compel Arbitration | 9, 14 |
| R. 3164 | Notice of Appeal | 15 |
| R. 3982 | Denial of RBC's Petition for Writ of Certiorari | 10 |
| R. 4003 | Oct. 29, 2014 Scheduling Order | 10 |

R. 4007              Consolidated Amended Complaint                    2, 10, 31, 38

R. 4007-1            2010 RBC Account Agreement                        32, 33

R. 4017              Motion to Compel Arbitration               8, 10, 14, 16, 35

Exhibit A to        March 2012 PNC Agreement                          8, 35
R. 4017-1

Exhibit B to        October 2012 PNC Agreement                        8, 35
R. 4017-1

Exhibit C to        December 2012 PNC Agreement                      8, 16, 35
R. 4017-1

Exhibit D to        February 2013 PNC Agreement                   8, 15, 37, 38
R. 4017-1

R. 4210             Order Denying RBC's Motion to Compel       10, 23, 24, 27
                    Arbitration

R. 4213             Notice of Appeal                                      10

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not needed.  Several recent decisions of this Court confirm that the district court's finding of waiver was correct and should be affirmed.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly concluded that RBC waived its arbitration rights under the 2013 PNC Agreement by failing to assert them for 22 months after the bank could have asserted them.

2.    Whether the district court correctly concluded that RBC's attempt to unilaterally add an arbitration provision was ineffective.

## STATEMENT OF THE CASE

### I.    Factual Background

The factual background has been set out in RBC's previous appeal (*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir.), *cert. denied*, 135 S. Ct. 144 (2014) (affirming district court's denial of RBC's renewed motion to compel arbitration)), but Mr. Dasher provides the following factual summary for ease of reference.

### A.    Overdraft Practices in General.

Plaintiffs allege that at all relevant times RBC provided check cards (also known as "ATM cards" or "debit cards") to its checking account customers. *E.g.*, Consolidated Amended Complaint, ¶ 33 (R. 4007) (hereinafter "Complaint"). Through the use of check cards, customers could engage in transactions using funds directly from their accounts, called "point of sale" ("POS") or "debit" transactions, or could withdraw money from their accounts at automatic teller machines, called ATM transactions. *Id.*  If, according to RBC's particular accounting practices, a customer did not have sufficient funds in his or her account, the transaction was considered an "overdraft" and an overdraft fee was charged. *E.g.*, Complaint, ¶¶ 38-39.  The Bank allowed POS and ATM transactions to go through despite the lack of funds in the account and charged a fee of $35 for each overdraft. *Id.* at ¶ 39.

2

Before check cards existed, banks occasionally extended the courtesy of honoring paper checks written on deficient accounts for customers who were in good standing. Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to purchase goods or services with a check with an expectation that funds would be available and that the check would clear. For example, if a customer used a check to purchase groceries, the grocery store would only know if the check cleared after the groceries had been purchased. *E.g.*, Complaint, ¶ 6.

The same considerations are not present when the transaction is one with a check card. The bank could simply decline the transaction when there are insufficient funds in the account. Retail and service transactions would simply not take place if the consumer were unable to present an alternative form of payment. ATM transactions could proceed if the bank provided a warning that an overdraft fee would be incurred and the consumer chose to proceed nevertheless. In fact, until a decade ago, most banks simply declined debit transactions that would overdraw an account. *Id.* at ¶ 7.

Instead of declining debit transactions when there were insufficient funds, however, or warning customers that an overdraft fee would be assessed if they proceeded with the POS or ATM transaction, RBC routinely processed such transactions in order to charge customers an overdraft fee of $35, even when the

3

transaction was for only a few dollars.  This automatic fee-based overdraft scheme was designed and intended solely to increase overdraft fee revenue.  *Id.* at ¶ 8.

Although it is possible to do so, RBC did not alert its debit card customers at the time a POS transaction or ATM withdrawal was made that the transaction would overdraft their account and cause them to incur fees.  Because RBC's customers were not notified of the potential overdraft and were not given the option to decline the transaction or to provide another form of payment, they incurred monetary damages in the form of overdraft fees.  *Id.* at ¶¶ 8-9.

In hopes of maximizing the revenue generated through overdraft fees, RBC manipulated and reordered debit card transactions from highest to lowest amount when posting to customers' accounts.  *See* Complaint, ¶ 43.  RBC manipulated customers' transactions for no reason other than to increase the number of overdraft fees it could assess.  *Id.*  As a result of RBC's manipulation of transaction posting order, customers were assessed overdraft fees for transactions that were initiated when the customer actually had sufficient funds.  *Id.* at ¶ 52.

### B.    Facts Regarding Plaintiff Dasher.

Mr. Dasher, a resident of Chatham County, North Carolina, opened a checking account with Triangle Bank in 1998.  *See* Amend. Decl. of M. Dasher, ¶ 2-3 (R. 2020-2).  Triangle Bank subsequently changed its name to Centura Bank, and then again to RBC.  *Id.* at ¶ 3.

4

Mr. Dasher alleges RBC charged him hundreds of dollars in overdraft fees and that many of these fees were assessed on very small check card purchases of less than $10.00. *See* Complaint, ¶¶ 73-79, 86-87. He further alleges that on numerous occasions he was charged overdraft fees for transactions when there were sufficient funds in his account, and that he only incurred overdraft fees because the bank reordered his debit transactions from the order in which he actually made them. *Id.* When Mr. Dasher disputed the propriety of these fees, no one at the bank raised the issue of arbitration. *See* Amend. Decl. of M. Dasher, ¶ 10. Mr. Dasher was not even aware the RBC Account Agreement had an arbitration clause until after this case was filed. *Id.* at ¶ 13.

## C.    The RBC Account Agreement.

On April 4, 2008, RBC revised its Account Agreement to include an arbitration clause for the first time. *See* Decl. of S. Bauer, ¶ 6 (R. 5-1, Case No. 10-cv-22190); *Dasher*, 745 F.3d at 1113-14. The arbitration clause stated:

**Arbitration of Disputes**

Unless otherwise provided in the Agreement, if you are dissatisfied with any aspect of the services we are providing to you and wish to complain, you should send your complaint to us in writing at the Branch, and it will then be dealt with in accordance with our complaint procedures. We try to resolve any issues as quickly as possible and, in most cases, can do so by telephone or in some other expeditious manner. If, however, either you or we have any unresolvable dispute or claim concerning the Agreement or the Account, such dispute or claim will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association ("AAA") and Title 9 of the U.S. Code. All such disputes or claims must be brought within one year from the date of accrual of the cause of action. Arbitration hearings will be held in the city where the Branch is located or where you and we otherwise mutually agree, and if no agreement can be reached, then in Raleigh, North Carolina. A single arbitrator will be appointed by the AAA and will be a retired judge or attorney with experience or knowledge in banking services. Party and nonparty discovery will be tailored as narrowly as possible to the contested issues of the dispute or claim. The arbitrator will refuse to permit the discovery sought if: (i) it is cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had an opportunity to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely probative value as evidence, taking into

account the amount in controversy and the importance of the proposed discovery in resolving contested issues of the dispute or claim. The party seeking discovery will bear the burden of demonstrating that the discovery sought satisfies these standards and is necessary and appropriate. As a condition of permitting discovery, the arbitrator may require the party seeking discovery to pay, on a current basis, all of the costs associated with the discovery sought. The arbitrator will award the filing and arbitrator fees to the prevailing party. A judgment on the award of the arbitrator may be entered by any court having jurisdiction. No provision of, nor the exercise of any rights under, this section will limit our right: (i) to exercise self-help remedies including set-off; or (ii) to request and obtain from any court having jurisdiction before, during or after the pendency of any arbitration, provisional or ancillary remedies or relief including temporary or permanent injunctive relief to enforce the provisions of or to restrain or prevent any breach or default by you under the Agreement. With respect to any injunctive relief we may seek or obtain, we will not be required to post any bond or other security whatsoever. Also, we will not be required to provide prior notice to you of our application for injunctive relief or the entering of injunctive relief, and you hereby waive, to the extent permitted by applicable law, your right to prior notice of any of the foregoing. **To the extent permitted by applicable law, you and we both waive any right to a trial by jury in any action arising from or related to the Agreement or the Account.**

See RBC Account Agreement, pp. 9-10 (font size from original) (R. 3008-8).

The RBC Account Agreement allowed the bank to change "any part or parts of the Agreement" at any time for any reason and that:

> *. . . the most current version of the Agreement supersedes all prior versions and will at all times govern your Account(s)*, and that your continued use of any Account after the effective date of any changes or new/revised version constitutes your agreement to be bound by the terms thereof, regardless of whether you have obtained a copy.

*Id.* at 3-4 (emphasis added and font size from original); *Dasher*, 745 F.3d at 1117.

### D. PNC Acquires RBC and Changes the Account Agreement.

On March 2, 2012, The PNC Financial Services Group, Inc. acquired all of the stock of RBC and merged it with its national bank subsidiary, PNC Bank. *See* PNC Agreement, p. 2 (R. 3008-2); *Dasher*, 745 F.3d at 1114. PNC notified RBC customers that, as of March 2, 2012, their RBC accounts would become PNC accounts. PNC Agreement, p. 5. PNC also provided the former RBC customers with a copy of the PNC Account Agreement for Personal Checking, Savings, and Money Market Accounts ("PNC Agreement"), which would supersede the RBC

6

Agreement and govern their accounts.[1]  *Id.* at 13; *also* Depo. of R. Ramsay, p. 126:6-23 (RBC representative confirming that every RBC customer was mailed a complete copy of the PNC Account Agreement) (R. 3008-1).  The cover page of the PNC Agreement contained the following verbiage: "For: RBC Bank® Converted Consumer Accounts."  *See* PNC Agreement, p. 2 (R. 3008-2).

The PNC Account Agreement became effective when, among other things, former RBC customers used their accounts after March 2, 2012.  *See* PNC Agreement, p. 13; *Dasher*, 745 F.3d at 1117-18.  Mr. Dasher used his account and became bound by the PNC Account Agreement.  *See* Brief of Appellant, pp. 12-13 (admitting same).  As "the most current version of the Agreement" between the parties, the PNC Account Agreement "supersede[d] all prior versions."  *See* RBC Account Agreement, p. 4; *also* PNC Agreement, p. 13 (noting that the PNC Agreement "defines the relationship between you and the Bank").  Unlike the predecessor RBC Account Agreement, the PNC Agreement did ***not*** include any language requiring disputes between the bank and its customers to be arbitrated.  *See* Brief of Appellant, p. 11 (acknowledging same).

---

[1]  In changing the Agreement, PNC relied on the provision of the RBC Account Agreement that gave RBC (or its successors) discretion to change the terms.  *See* RBC Account Agreement, pp. 3-4; *also id.* at 12 (noting that the bank "may transfer or assign our rights and obligations under the Agreement in whole or in part without notice to or approval by you . . . .").

### E.     The PNC Account Agreement.

It is undisputed that the March 2012, October 2012, and December 2012 versions of the PNC Agreement did not contain an arbitration provision.  *See* R. 4017, pp. 2-3; Exhs. A-C to R. 4017-1.  Also, the amendments included in each of these versions of the PNC Agreement said nothing about the bank having the ability to add new terms to the agreement.  *Id.*  Instead, the various versions of the 2012 PNC Agreement simply stated: "We reserve the right to amend this Agreement."  *See* Exhs. A-C to R. 4017-1.

While PNC purported to amend its customer agreement in February 2013 to *add* an arbitration provision, the new provision explicitly states that it only applies to a claim "which *arises* out of or relates to *this* Agreement."  *See* Exh. D to R. 4017-1, p. 13 (emphasis added).  The preamble to the arbitration provision contained in the February 2013 PNC Agreement likewise states that arbitration "will apply to you and us and to your Account as of the date your account was opened (or, if you are an existing customer, *as of the date of this Agreement*)." *See* Exh. D to R. 4017-1, p. 13 (emphasis added).  Thus, by its plain terms, the arbitration provision applies as of February 1, 2013, not to active litigation.

## II.   Brief Procedural History

On July 2, 2010, Mr. Dasher filed suit against RBC, challenging the bank's assessment of overdraft fees.  *See* R. 1 in Case No. 10-22190 (S.D. Fla.).  On July

22, 2010, RBC moved to compel arbitration pursuant to the arbitration clause contained in RBC's Account Agreement. *See* R. 5 in Case No. 10-22190 (S.D. Fla.). The district court denied RBC's original arbitration motion, finding the RBC arbitration clause unenforceable. *See In re Checking Account Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010). RBC appealed.

Before this Court could hear the appeal, the Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Thereafter, the parties moved to vacate the appeal and remand for reconsideration, which the Court granted. On remand, RBC filed a renewed motion to compel arbitration. Mr. Dasher then conducted discovery on arbitration issues and such discovery revealed PNC's March 2012 acquisition of RBC, and that PNC's then-current account agreement did not require arbitration. *Dasher*, 745 F.3d at 1113-14.

In opposing RBC's renewed motion to compel arbitration, Dasher argued that the new version of the deposit agreement issued by PNC Bank, which did not contain any arbitration provisions, governed the arbitration question. On January 11, 2013, the district court agreed and denied RBC's motion to compel arbitration. *See In re Checking Account Overdraft Litig.*, 915 F. Supp. 2d 1334 (S.D. Fla. 2013) (R. 3162). RBC again appealed.

On February 10, 2014, this Court affirmed. *Dasher*, 745 F.3d at 1111. On February 28, 2014, RBC filed its petition for rehearing, which was denied on

9

March 27, 2014. On April 1, 2014, RBC filed a motion to stay the mandate pending the filing of a petition for writ of certiorari. The Court granted the stay.

On June 20, 2014, RBC filed its petition for writ of certiorari. Appellees filed their opposition on August 22, 2014. On October 6, 2014, the Supreme Court denied RBC's petition. *See* R. 3982. This Court issued the mandate on October 20, 2014. *See* R. 3993. Pursuant to the district court's October 29, 2014 Scheduling Order (R. 4003), Plaintiffs filed their consolidated Complaint on November 10, 2014. *See* R. 4007.

On December 5, 2014, PNC once again moved to compel arbitration of Mr. Dasher's claims, this time pursuant to an arbitration clause that had been added by PNC nearly two years earlier, in February 2013, which was almost three years after the litigation had commenced. *See* R. 4017. The district court denied the motion on August 21, 2015. *See* R. 4210. RBC appealed yet again. *See* R. 4213.

## STANDARD OF REVIEW

Generally, the Court reviews *de novo* a district court's denial of a motion to compel arbitration. *Becker v. Davis*, 491 F.3d 1292, 1297 (11th Cir. 2007); *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1270 (11th Cir. 2002), *cert. denied*, 538 U.S. 945 (2003); *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 614 (11th Cir. 2001).  In this instance, however, several issues have already been resolved by this Court in the prior appeal. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014).  RBC cannot relitigate those issues. *Schiavo v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) ("The [law of the case] doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal").

## SUMMARY OF THE ARGUMENT

The district court's denial of RBC's latest motion to compel arbitration should be affirmed. RBC asks this Court to ignore the fact that it waited 22 months to seek arbitration based on an arbitration clause that became effective on *February 1, 2013*. RBC's belated attempt to invoke this arbitration clause after litigating without substantive mention of it for almost two years constitutes waiver under precedents from this Court arising out of MDL No. 2036. *E.g.*, *Johnson v. KeyBank, N.A.*, 754 F.3d 1290 (11th Cir. 2014); *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012); *Barras v. BB&T Co.*, 685 F.3d 1269 (11th Cir. 2012); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224 (11th Cir. 2012).

The district court's denial of arbitration should also be affirmed for the separate and independent reason that PNC's attempt to ***add*** an arbitration provision to an agreement that did not previously even mention arbitration was a material change that could not be made unilaterally. The district court's finding was especially appropriate because the clause was added during an ongoing case in which arbitration had already been denied and affirmed by this Court.

12

## **ARGUMENT**

## I.    **The District Court Correctly Held That RBC Waived Enforcement of the 2013 PNC Arbitration Clause.**

As this Court noted in *Johnson v. KeyBank, N.A.*, "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right." 754 F.3d at 1294 (citing *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n,* 62 F.3d 1356, 1365 (11th Cir. 1995)). While questions regarding arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, "the doctrine of waiver is not an empty shell." *Johnson*, 754 F.3d at 1294 (quoting *Morewitz,* 62 F.3d at 1366).

To determine whether a party has waived its right to arbitrate, this Court applies a two-part test: (1) whether the party seeking arbitration "substantially participates in litigation to a point inconsistent with an intent to arbitrate"; and (2) whether "this participation results in prejudice to the opposing party." *Johnson*, 754 F.3d at 1294; *Garcia*, 699 F.3d at 1277; *Morewitz,* 62 F.3d at 1366. Prejudice exists when there is delay in enforcing an arbitration clause, *Garcia*, 699 F.3d at 1277; *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)), and the party opposing arbitration "undergo[es] the types of litigation expenses that arbitration was designed to alleviate." *Johnson*, 754 F.3d at 1294; *Morewitz,* 62 F.3d at 1366. Both prongs are present here.

13

Though RBC has repeatedly sought to arbitrate this case, it never raised the February 2013 arbitration clause *until December 2014*. RBC obviously hoped to avoid relying on its unilateral and material change in the parties' contract until the bank's alternative arguments met with unfavorable results both in the district court and on appeal. Such "sandbagging" and legal gamesmanship has greatly prejudiced Mr. Dasher.

> **A.** **RBC Acted Inconsistently With an Intent to Arbitrate Under the 2013 Agreement by Sleeping on Those Rights and Continuing to Litigate Over the Repealed Arbitration Clause.**

Back in December 2012, during argument before the district court on RBC's second arbitration motion, the court orally ruled that it would deny RBC's motion to compel arbitration, finding that the parties no longer had an agreement to arbitrate. *See* R. 3162. On January 11, 2013, the district court entered its written order. *Id.* On February 1, 2013, RBC's successor-in-interest, PNC Bank, imposed an amended account agreement which replaced the existing dispute resolution section with one that required arbitration. *See* R. 4017, pp. 3-7.[2] Yet, rather than promptly assert its rights under the new February 1, 2013 version of the PNC Agreement, RBC continued to litigate over whether the prior version of the PNC

---

[2] It may be reasonably inferred that, because the district court stated at the hearing in December of 2012 that it would rule against the bank, PNC sought to insert an arbitration provision in its account agreement so that, if it lost on appeal, it could later argue that the new arbitration provision applied to this lawsuit.

14

Agreement (without an arbitration provision) applied to former RBC customers like Mr. Dasher. RBC never even suggested that the arbitration clause it was litigating had been superseded by the February 2013 PNC Agreement. *See, e.g.*, Notice of Appeal (R. 3164); Brief of Appellant in Appeal No. 13-10257; Petition for Rehearing in Appeal No. 13-10257; Petition for Writ of Cert. (Supreme Ct. Dkt. No. 13-1522). The February 2013 PNC Agreement became effective 20 days after the district court's initial order denying RBC's arbitration motion, well before RBC needed to notice its appeal from the district court's January 11th Order.[3]

Thus, RBC chose to litigate for two years over an agreement it now claims was not relevant to whether Mr. Dasher's claims are subject to arbitration. The district court correctly refused to countenance RBC's gamesmanship. This Court should affirm that decision, particularly in light of the myriad times RBC strategically chose to keep silent about the new February 2013 arbitration provision. Appellant had numerous opportunities to raise this issue with the district court and this Court, if it truly thought it could enforce the provision.[4]

---

[3] Under the terms of the PNC Agreement, Mr. Dasher became bound by the February 2013 Agreement the moment he "used" his account after February 1, 2013. *See* Exh. D to R. 4017-1, p. 3 ("by using the account . . . you agree to be bound by the terms and conditions of this Agreement").

[4] As shown in Part I.B, *infra*, RBC likely did not raise the issue because it was well aware that an arbitration clause adopted during litigation could not be enforced to end the litigation.

RBC had at least six options by which it could have promptly raised the issue. Instead it chose to litigate, waited to notify Mr. Dasher about the new agreement until long after it became effective (R. 4017-3, p. 3 (¶7)), and failed to disclose the existence of the new arbitration clause to Mr. Dasher's counsel.

First, RBC could have acted to insert an arbitration provision in the PNC Agreement during the months preceding the hearing on arbitration, once it had seen Mr. Dasher's October 15, 2012 supplemental brief laying out the argument that RBC's arbitration provision was no longer in effect and could not be enforced because of the March 2012 PNC Agreement. *See* R. 3008, pp. 3-8. PNC issued a new account agreement effective December 10, 2012 which had no arbitration provision. *See* R. 4017, p. 3; Exh. C to R. 4017-1. While Mr. Dasher would have opposed enforcement of an arbitration provision for the meritorious reasons argued in Part I.B below, the issue would have been litigated in a timely manner. The fact that PNC waited to deliver the new agreement with an arbitration clause to its customers until after the district court announced it would deny the motion, was gamesmanship that made every PNC customer a pawn in a cynical litigation ploy. These actions must not be rewarded.

Second, the bank could have waited to file its notice of appeal until after it asserted its arbitration rights under the February 2013 PNC Agreement. The February 2013 version of PNC Agreement became effective on February 1, 2013,

16

which was only 20 days after the district court's January 11th Order denying RBC's renewed arbitration motion.  Thus, RBC had ten days during which it could have alerted the district court about the new agreement before it needed to file an appeal.  Instead, RBC sat on its rights.[5]

Third, RBC could have sought an extension of time to file its notice of appeal under Federal Rule of Appellate Procedure 4(a)(5).  Appellate Rule 4(a)(5) allows a party to seek a 30-day extension of time to file a notice of appeal upon a showing of good cause.  *See* Fed. R. App. P. 4(a)(5).  Availing itself of this rule would have given RBC until March 12, 2013 to alert the district court of the February 2013 PNC Agreement and still preserve its appellate rights.

Fourth, even after filing its notice of appeal on January 11, 2013, pursuant to Federal Rule of Civil Procedure 62.1, RBC could have sought an indicative ruling on a motion to compel arbitration as to whether the February 2013 PNC Agreement's arbitration provision would require Mr. Dasher to resolve his claims only in arbitration.  *E.g.*, *Drew Estate Holding Co. v. Fantasia Distribution, Inc.*, 539 Fed. App'x 998, 999 (11th Cir. 2013).

---

[5] RBC's suggestion that it was required to file its notice of appeal earlier because the district court had indicated at oral argument that it was going to deny RBC's arbitration motion is unpersuasive.  This Court has made it clear that "the time within which an appeal can be filed runs from the entry of the written decision or order being appealed."  *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1217 (11th Cir. 2002).

17

Fifth, RBC could have opted to simply dismiss its earlier appeal when its claimed arbitration rights purportedly accrued under the February 2013 PNC Agreement.  As to Mr. Dasher at least, the bank could have moved to compel arbitration under the new arbitration clause, though such motion would ultimately have been denied.

Sixth, at a minimum, RBC should have alerted this Court and opposing counsel to the fact that the February 2013 PNC Agreement might render moot the question RBC had presented on appeal and requested guidance from the Court.[6] Instead, RBC chose to litigate the prior arbitration motion for over 22 months while sleeping on arbitration rights that had accrued (if at all) on February 1, 2013.

RBC's failure to inform Mr. Dasher's counsel of the addition of an arbitration provision to the PNC Agreement until over a year after it went into effect raises a serious question of whether such a failure to disclose the fact was strategic.  In *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), the Sixth Circuit, when faced with a similar attempt to impose a new dispute resolution mechanism in the middle of an existing case, took issue with the fact that the

---

[6] The parties had stipulated to vacate the trial court's order denying RBC's initial motion to compel arbitration and remand the case for further proceedings in light of *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  *See* R. 1670. Certainly, this Court was responsive to such a potentially important change in circumstances then, but RBC intentionally failed to notify the Court in 2013 because it was no doubt planning to make a new arbitration argument post-appeal.

defendant sent the new contract to the named plaintiff rather than his lawyer.  *Id.* at

680.  According to the Sixth Circuit:

> One party's lawyer may not communicate about a pending case with
> an opposing litigant he knows has legal representation.  Ky. Sup.Ct.
> R. 3.130; *see also* Model Rules of Professional Conduct R. 4.2 (1983).
> If Citicorp's in-house counsel prepared a contract, expecting it to be
> given to a represented litigant but also expecting it to govern existing
> cases, they might find themselves near the edge of this rule.  It makes
> no difference who handed Russell the arbitration agreement, whether
> a member of the legal department or a supervisor at the call center.
> The canons preclude a lawyer not only from communicating with a
> represented adversary but also (for the most part) from helping his
> client do so.  *See Restatement (Third) of the Law Governing
> Lawyers* § 99, cmt. k (2000).   And it makes no difference who
> prompted the dialogue, whether Russell or Citicorp.  The lawyer's
> obligations remain in place either way.  *See* Ky. Sup.Ct. R. 3.130,
> cmt. (3).

*Id.*  RBC's strategic failure to alert opposing counsel of material changes to the

arbitration provision, on which RBC no doubt intended to rely, should not go

unnoticed.  And the history of this litigation demonstrates that RBC has acted at

every stage to delay consideration of the merits of Mr. Dasher's claims via

procedural machinations, even going so far as, on this occasion, attempting a

change of the operative agreement in the middle of the lawsuit.

RBC's failure to notify the district court, this Court, or Mr. Dasher's counsel

of the purported new arbitration provision and RBC's failure to timely invoke its

arbitration rights is inconsistent with an intent to arbitrate under the February 2013

Agreement.  *See Garcia*, 699 F.3d at 2177-78; *S&H Contractors*, 906 F.2d at 1514.

19

In other appeals emanating from this MDL, this Court has consistently upheld a finding of waiver where, as here, a bank first litigated an issue before the district court, received an unfavorable ruling, and then sought to assert rights it previously slept on. *See Johnson*, 754 F.3d at 1295; *Hough*, 672 F.3d at 1228; *Barras*, 685 F.3d at 1274.

In *Hough*, for example, this Court held the issue of whether unconscionability should be decided by an arbitrator pursuant to a delegation clause was waived because "Regions did not invoke that delegation provision in response to the Houghs' arguments that the clause was unconscionable. Regions instead asked the district court to 'deny the conscionability challenge.'" 672 F.3d at 1228. Just as RBC did below with its February 2013 agreement:

> Regions, "as a party to the contract it signed, is presumed to know that it had . . . [the right] to arbitrate" the issue of consciconability, *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292, 294, 609 S.E.2d 103, 105 (2004), and "waive[d] [that aspect of the] agreement to arbitrate by taking actions that [were] inconsistent with [that] right of arbitration," *M. Homes, LLC v. S. Structural, Inc.*, 281 Ga. App. 380, 383, 636 S.E.2d 99, 101 (2006) (internal quotation marks omitted).

*Id.* In reaching that conclusion in *Hough*, this Court relied upon *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011). In *Doe*, this Court found that the defendant waived its arbitration delegation argument under the "invited error doctrine," which "stands for the common sense proposition that someone who invites a court down the primrose path to error should not be heard to complain

20

that the court accepted its invitation and went down that path." *Doe*, 657 F.3d at 1213 (citing *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1341 n.5 (11th Cir. 2003) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party") (quotation marks omitted)).  The defendant in *Doe*

> asked the district court to decide for itself whether the dispute was subject to arbitration. Only when the matter was illuminated by the light of an unfavorable decision from the district court did the cruise line suddenly see that the court ought not have answered the question after all.

657 F.3d at 1213.  The same is true here: RBC invited the error of which it complains when it litigated over what it now contends was a non-operative arbitration provision for two years.  Only after it had litigated and lost its prior motion before the district court, this Court, and the Supreme Court did RBC argue that an entirely different arbitration provision in an entirely different agreement governed Mr. Dasher's dispute.  The district court correctly held that RBC's belated assertion of its 2013 arbitration clause justified a finding of waiver.

The holding in *Barras* also supports this conclusion.  In affirming the district court's finding of waiver, the *Barras* panel explained:

> The district court based its [waiver] conclusion on the fact that over a year prior, BB&T asked the district court to determine the question in its original motion to compel arbitration, and failed to move the court to allow an arbitrator to determine the unconscionability of the provision.  Because Barras had incurred the expense of opposing the

21

original motion as well as on appeal to this Court, the district court refused to allow BB&T to argue for the first time on remand that the arbitrator should determine the issue.

*Id.* at 1274-75.

This Court's more recent *Johnson* decision also supports a finding of waiver by RBC. There, the Court reversed the district court's decision to refer the question of arbitrability to the arbitrator, finding "[t]his case is materially indistinguishable from *Barras* and *Hough,* and the two-pronged *Morewitz* waiver analysis yields the same result here: KeyBank has waived enforcement of [its arbitration rights]." *Johnson*, 754 F.3d at 1295. The court reached this decision because, like RBC, KeyBank substantially participated in litigation in a way that was inconsistent with the rights it later intended to assert. *Id.* Only after the district court refused to compel arbitration did KeyBank assert its delegation clause argument that it failed to originally assert. *Id.* RBC did the same here by sleeping on its purported arbitration right under the February 2013 PNC Agreement until three different courts ruled against its earlier arguments.

Applying *Johnson*, *Barras*, *Hough*, and *Doe*, the district court correctly concluded that RBC waived application of the arbitration provision in the February 2013 PNC Agreement by failing to seek to enforce that provision in a reasonably prompt manner. Moreover, RBC invited the courts to rule on an arbitration provision that RBC now contends was not the governing provision – keeping that

22

contention silent for more than two years while it appealed the denial of its first motion to compel arbitration all the way to the Supreme Court. *See* R. 4210, p. 2.

RBC suggests that the district court's finding that it acted inconsistently with its right to arbitration was erroneous because the only "litigation" that it engaged in was pursuing arbitration. *See* Brief of Appellant, pp. 21-23. This argument ignores this Court's holdings in *Johnson*, *Barras*, and *Hough*. In each of these cases, the only "litigation" that was done was the defendant asserting ***some*** of its arbitration rights while sleeping on other rights that it could have asserted. *See Johnson*, 754 F.3d at 1295 (finding waiver where pursued some arbitration rights while sleeping on others); *Barras*, 685 F.3d at 1274-75 (same); *Hough*, 672 F.3d at 1228 (same). Those precedents (two of which – *Hough* and *Barras* – were issued prior to February 2013) establish that RBC's conduct in this case was inconsistent with its rights under the 2013 PNC Agreement.

As detailed above, RBC had numerous opportunities to claim rights under the 2013 PNC Agreement promptly rather than waiting 22 months to do so and then only after it lost an appeal premised on a different arbitral agreement. Rather than timely asserting its rights, RBC forced Mr. Dasher around the same "pretrial-motion-and-appeal carousel" that this Court found problematic in *Johnson* (754 F.3d at 1296) and added an ill-fated stop at the Supreme Court to boot. By doing

23

so, RBC acted in a manner inconsistent with an intent to enforce the arbitration clause from the 2013 PNC Agreement.

## B.    RBC's Actions Prejudiced Mr. Dasher.

RBC's argument that Mr. Dasher has not suffered prejudice as a result of its five years of pretrial motions and appeals is not only risible, it is a new argument that RBC failed to substantively raise before the district court, and is therefore waived.  *E.g.*, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court"); *Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir. 1994).

The district court correctly found that Mr. Dasher suffered substantial prejudice based on RBC's conduct.  *See* R. 4210, p. 4. This finding was well-supported.  First, "[p]rejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate."  *Garcia*, 699 F.3d at 2178 (quoting *Morewitz*, 62 F.3d at 1366).  Like the plaintiffs in the other MDL decisions cited above, Mr. Dasher has expended substantial resources in confirming his right to litigate in federal court.  Mr. Dasher defended RBC's appeal to this Court, and the bank's subsequent petition to the Supreme Court for 20 months.  Very little of this enormous effort would have been expended if RBC had promptly asserted its

24

arbitration rights under the February 2013 PNC Agreement.  Certainly those efforts would only have been expended once, and not for the second time as is the current regrettable state of affairs.  If the bank was determined to prove its entitlement to rely on a new arbitration clause, and had abandoned its reliance on the one in the RBC Agreement, this issue would have been concluded well-over a year ago.

"A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'"  *Preston v. Ferrer,* 552 U.S. 346, 357 (2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 633 (1985)).  Rather than press its arbitration rights under the February 2013 PNC Agreement, or even try to amend the PNC Agreement to include an arbitration clause before the district court ruled, RBC put Mr. Dasher (as well as the district court and this Court) through the wringer on the issue of whether the 2012 PNC Agreement eliminated the arbitration provision in the RBC Agreement, forcing Mr. Dasher to spend resources opposing the original motion and contesting its appeals – including discovery concerning whether the RBC provision was unconscionable to begin with – precisely the kind of litigation costs that the early assertion of arbitration is intended to alleviate.  *See Johnson*, 754 F.3d at 1296; *Morewitz,* 62 F.3d at 1366.  By slowing the process and exponentially increasing both parties' costs, RBC's delay undermined the purpose of the Federal Arbitration Act's "liberal federal policy favoring arbitration agreements."  *Johnson*, 754 F.3d

at 1296 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  If the issue of the enforceability of the new arbitration provision was brought to light quickly, the parties could have litigated that issue instead of, or concurrently with, the prior appeal.

*Barras*, *Hough*, and *Johnson* compel the conclusion that Mr. Dasher suffered prejudice sufficient to create waiver because RBC's delay forced him to bear the same types of costs and engage in the same types of procedures as did the plaintiffs in those three cases.  *See Johnson*, 754 F.3d at 1296; *Barras,* 685 F.3d at 1274; *Hough*, 672 F.3d at 1228; *see also Morewitz,* 62 F.3d at 1366 ("We conclude that [defendant] had ample opportunity to demand arbitration well in advance of the decision that significantly changed the legal position of the parties to the prejudice of [plaintiff]").

As noted above, had it acted earlier, the PNC arbitration provision could have even been raised before the district court denied RBC's motion.  RBC instead chose a different path that drove up Mr. Dasher's litigation expenses and needlessly delayed Mr. Dasher's case while ***not even mentioning*** that the bank thought the new arbitration clause applied.  RBC must live with its decision.  The district court was correct not to give RBC a second bite at the apple.  *Johnson*, 754 F.3d at 1296.

## C.    RBC's Delay Supports a Finding of Waiver.

Contrary to RBC contention, the district court did not say that it should have abandoned its prior appeal if it wanted to enforce the arbitration clause in the 2013 PNC Agreement.  *See* Brief of Appellant, pp. 27-28.  RBC could have pursued its appeal from the district court's denial of its earlier arbitration motion and raised the PNC arbitration clause.  Just as was the case in *Johnson*, *Barras*, and *Hough*, however, a litigant may not assert arbitration rights in a piecemeal or staggered fashion, and thereby give itself multiple opportunities to win while bludgeoning the opposition with expense and delay.  Just as the delay in failing to invoke the delegation clause was a factor in *Johnson*, *Barras*, and *Hough*, RBC's delay in invoking its rights under the 2013 PNC Agreement was properly considered when evaluating RBC's belated motion.  *E.g.*, R. 4210, p. 4 ("Defendant elected to litigate an appeal for nearly two years before first calling [2013 arbitration clause] to the attention of this Court"); *S&H Contractors*, 906 F.2d at 1514 ("we may consider the length of delay in demanding arbitration").

There were many options available to RBC that would have allowed it to assert its rights under the 2013 PNC Agreement without abandoning its argument that RBC's old arbitration clause might also apply.  Several obvious solutions to the bank's dilemma are described above.  None of those options would have required RBC to abandon its appellate position as to the RBC Agreement.  Rather,

27

what the district court correctly found was that RBC was not entitled to litigate its prior arbitration motion for over 22 months while sleeping on arbitration rights that had purportedly accrued on February 1, 2013. Such a delay was unquestionably indicative of waiver.

RBC's attempt to suggest that Mr. Dasher's counsel "remained silent and waited until the [prior] appeal was concluded" before taking a position on this issue is patently false. *See* Brief of Appellant, p. 29 n.10. RBC's first mention of the February 2013 PNC Agreement came on February 28, 2014 – after a year's worth of delay – in its Petition for Panel Rehearing. *See* Petition, p. 10 n.5. As this Court's rules do not allow responses to be filed to petitions for rehearing, Mr. Dasher's counsel did not remain "silent" as RBC suggests but was prevented from responding by RBC's chosen vehicle for raising the issue in the first place. Moreover, Mr. Dasher was under no obligation to deter RBC from its reliance solely on its own RBC Agreement.

### D. The Filing of a Consolidated Amended Complaint Did Not Revive RBC's Arbitration Rights.

RBC argues that its right to compel arbitration was revived when Mr. Dasher filed his consolidated amended complaint. *See* Brief of Appellant, pp. 33-37. In support of this argument, Appellant relies upon *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194 (11th Cir. 2011). *Krinsk* does not support RBC.

*Krinsk* noted that, generally speaking, the filing of an amended complaint does not revive a defense that the defendant waived. 654 F.3d at 1202. However, courts will permit the defendant to rescind an earlier waiver, and revive the prospect of arbitration, if the amended complaint unexpectedly changes the scope or theory of the plaintiff's claims. *Id. Krinsk* made clear that a defendant's waiver should not be nullified and there will be no revival of arbitration when the plaintiff merely files an amended complaint that does not unexpectedly expand the scope of the litigation. *Id.* at 1203.

*Krinsk* found the amended complaint was not "immaterial" because the new class definition:

> greatly broadened the potential scope of this litigation by opening the door to thousands – if not tens of thousands – of new class plaintiffs not contemplated in the original class definition by discarding the old definition's limits on the class plaintiffs' age and on the bases for their HELOC suspensions, and by expanding the class period from over three months to over three years.

*Id.* The Court found that it was the "vast augmentation of the putative class" that altered the shape of litigation in such a way that SunTrust should have been allowed to rescind its waiver of arbitration. *Id.* at 1204.

Here, Mr. Dasher did not substantially revise his claims in the consolidated amended complaint. Dasher's original complaint against RBC included the following putative classes:

> All RBC customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of RBC's practice of re-sequencing debit card transactions from highest to lowest (the "National Class").

and

> All RBC customers having accounts at branches in the state of North Carolina for the purpose of asserting claims under North Carolina's consumer protection statute (the "North Carolina State Subclass") (*see* Fifth Claim for Relief, *infra*).

*See* Original Complaint, ¶ 15 (R. 1 in Case No. 10-22190 (S.D. Fla.)). The original complaint asserted five causes of action: (1) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (*id.* at ¶¶ 86-92); (2) Unconscionability (*id.* at ¶¶ 93-97); (3) Conversion (*id.* at ¶¶ 98-109); (4) Unjust Enrichment (*id.* at ¶¶ 110-18); and (5) Violations of State Unfair Trade Practice Laws (*id.* at ¶¶ 119-21).

Dasher's consolidated amended complaint includes the following putative classes:

> All RBC customers in the United States who, within the applicable statute of limitations preceding the filing of this action, incurred an overdraft fee as a result of RBC's practice of re-sequencing debit card transactions from highest to lowest and whose account remained open on or after February 1, 2013 (the "Dasher National Class").

and

> All RBC customers having accounts at branches in the state of North Carolina for the purpose of asserting claims under North Carolina's consumer protection statute whose account remained open on or after

30

February 1, 2013 (the "Dasher North Carolina State Subclass") (*see* Fifth Claim for Relief, *infra*).

*See* Complaint, ¶ 19 (R. 4007). Mr. Dasher asserts the same five causes of action: (1) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (*id.* at ¶¶ 94-100); (2) Unconscionability (*id.* at ¶¶ 101-05); (3) Conversion (*id.* at ¶¶ 106-17); (4) Unjust Enrichment (*id.* at ¶¶ 118-26); and (5) Violations of State Unfair Trade Practice Laws (*id.* at ¶¶ 127-30).

As opposed to *Krinsk*, Mr. Dasher's amendment **shrank the size of the putative classes** by excluding those RBC customers who closed their account prior to February 1, 2013. The consolidated amended complaint did not "greatly broaden[] the potential scope of this litigation" as RBC suggests.

RBC's fatuous contention that naming Ms. Avery as a co-plaintiff and noting that PNC Bank is the successor in interest to RBC somehow greatly broadened the potential scope should be summarily rejected. She was already a co-plaintiff with Mr. Dasher to the extent that she filed her own class action complaint that was transferred into the MDL, and she successfully argued side by side with Mr. Dasher in the previous arbitration motions and appeals.

Equally devoid of merit is RBC's suggestion that attaching the 2009 RBC Agreement to the Complaint, rather than the 2010 RBC Agreement, which was attached to the original complaint, was a material change. The 2009 Agreement

31

was always at issue in Mr. Dasher's case. *See* Original Complaint, ¶ 31 (explaining that 2010 version of agreement was a representative copy only). Because North Carolina has a three year statute of limitation for breach of contract – *Miller v. Randolph*, 478 S.E.2d 668, 670 (N.C. Ct. App. 1996) – every version of the RBC Agreement back to July 2007 has been at issue from the outset.

The pertinent language regarding RBC's posting order is virtually the same in the 2009 and 2010 versions. The 2009 RBC Agreement that RBC selectively quotes from states as follows:

> Unless applicable law requires a different order, we will normally honor withdrawals, fund transfers and other payments from the Account in the following order: wire transfers will be paid first, then ACH and other electronic fund transfers, followed by cashed checks and other cashed Items, and then remaining transactions posting on the same Business Day will be paid in descending order of amount, largest paid first; provided, however, we reserve the right, in our sole discretion, to pay Items in any order we deem appropriate from time to time, without any liability to you or any other person.

*See* R. 1-1 in in Case No. 10-22190 (S.D. Fla.), p. 6.

The 2010 RBC Agreement that RBC selectively quotes from states:

> Unless applicable law requires a different order, we will normally honor withdrawals, fund transfers and other payments from the Account which are presented on the same Business Day in the following order: wire transfers will be paid first, then all other items including ACH and other electronic fund transfers, cashed checks and other cashed Items, etc., will be paid in descending order of amount, largest paid first; provided, however, we reserve the right, in our sole discretion, to pay Items in any order we deem appropriate from time to time, without any liability to you or any other person.

32

*See* R. 4007-1 in in Case No. 09-md-02036 (S.D. Fla.), p. 6.

The discretion reserved to RBC to order transactions in any order it deemed appropriate, which is found in both versions of the Agreement, is what is critical to the analysis under the claims in both the original and amended complaints. This discretion was a fundamental tenet in the district court's order denying the motions to dismiss filed by other defendant banks in this MDL. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1315 (S.D. Fla. 2010) ("where discretion exists . . . that discretion must be exercised in good faith").

RBC's waiver is not excused by Mr. Dasher's consolidated amended complaint. The district court's finding that RBC waived its arbitration rights under the 2013 PNC Agreement should be affirmed.

## II. The District Court Correctly Found that PNC Cannot Unilaterally Add Arbitration to its Agreement.

The district court's denial of RBC's latest arbitration motion should also be affirmed for the independent reason that RBC was without the authority to add a material provision to a contract under these circumstances.

### A. PNC/RBC Cannot Add a Material Contractual Provision.

Numerous courts have held that whether a party can add a material provision to a contract turns on whether the change relates to subjects addressed in the agreement which provides for one party to alter the terms. *E.g., Follman v. World*

33

*Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 159-60, 166 (E.D.N.Y. 2010) ("Because the arbitration provision falls outside the scope of the universe of terms contemplated by the original agreement, the change-of-terms provision did not authorize [issuer] to add it"); *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189, 191, 197-98 (E.D.N.Y. 2004) (holding that provision allowing bank to "add or remove requirements" or "amend or change" the contract did not authorize addition of new arbitration clause); *Perry v. FleetBoston Fin. Corp.*, 2004 WL 1508518, at \*4 (E.D. Pa. July 6, 2004) ("this Court construes Defendant's unilateral change in terms authority to extend only to the modification or alteration of those terms previously contemplated in the original agreement"); *Sears Roebuck & Co. v. Avery*, 593 S.E.2d 424, 426 (N.C. Ct. App. 2004) ("Because the arbitration clause was a wholly new term that did not fall within the universe of subjects included in the original agreement, Sears did not have authority under its 'Change of Terms' provision to condition continued use of its credit card on acceptance of the arbitration clause") (applying Arizona law); *Discover Bank v. Shea*, 827 A.2d 358, 360-62 (N.J. Super. Ct. Law Div. 2001) (finding amendment adding arbitration clause not binding because addition of arbitration clause was not the type of unilateral change contemplated by the original agreement); *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 278, 289 (Cal. Ct. App. 1998) (applying California law to similar facts and concluding that "when the

34

account agreements were entered into, the parties did not intend that the change of terms provision should allow the bank to add completely new terms such as an ADR clause simply by sending out a notice"); *Leight v. Osteosymbionics, LLC*, 2016 WL 193511, at *4-6 (Ohio Ct. App. Jan. 14, 2016) (refusing to allow defendant to unilaterally add arbitration clause under Ohio law); *Maestle v. Best Buy Co.*, 2005 WL 1907282, at *3-6 (Ohio Ct. App. Aug. 11, 2005) (same).

Here, RBC concedes and the evidence establishes that the March 2012, October 2012, and December 2012 versions of the PNC Agreement did not contain an arbitration provision. *See* R. 4017, pp. 2-3; Exhs. A-C to R. 4017-1. Moreover, the change-in-terms sections of each of these versions of the PNC Agreement say nothing about the ***addition*** of ***new*** terms. Instead the various versions of the 2012 PNC Agreement simply state: "We reserve the right to amend this Agreement." *See* Exhs. A-C to R. 4017-1. RBC should not be permitted to rely on that vague "amendment" provision to support its contention that Mr. Dasher agreed to arbitrate when the bank ***added*** arbitration in 2013. Obviously, since Mr. Dasher was actively opposing arbitration at that time, Defendant would need to make a strong showing of Mr. Dasher's purported agreement to arbitrate this case simply because he continued to bank with PNC.

Under North Carolina law, the addition of an arbitration clause to a contract is a *per se* material alteration and will not become a part of such a contract unless

35

both parties explicitly agree to it.  *See Supak & Sons Mfg. Co. v. Pervel Indus., Inc.*, 593 F.2d 135, 136 (4th Cir. 1979); *Frances Hosiery Mills, Inc. v. Burlington Indus., Inc.*, 285 N.C. 344, 204 S.E.2d 834 (1974).  Mr. Dasher has not explicitly agreed to the material alteration of the PNC Agreement.  Therefore, Mr. Dasher is not bound by PNC's unilateral addition.  The fact that the arbitration clause included an opt-out provision does not change this analysis because PNC did not have the ability to unilaterally ***add*** the arbitration provision.

Such a result is particularly appropriate here given the procedural posture of this case.  The district court's finding that the parties no longer had an agreement to arbitrate once the 2012 PNC Agreement became effective, which was affirmed by this Court and which the Supreme Court declined to review, is the law of the case.  *See This That and the Other Gift and Tobacco, Inc. v. Cobb County*, 439 F.3d 1275, 1283 (11th Cir. 2006); *Schiavo*, 403 F.3d at 1291 ("The [law of the case] doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal").  Through its latest motion to compel and this appeal, RBC seeks to circumvent the law of the case – that the lack of any arbitration clause in the 2012 PNC Agreement precluded RBC from compelling arbitration – by suggesting that two years later it can come forth and rely on an amended agreement to impose a new arbitration regime.  Such an argument not only defies logic and common sense, but, taken to its logical

36

extreme, would make motions to compel arbitration unending, as defendants responded to every defeat with a new unilaterally imposed arbitration provision intended to encompass the dispute already being litigated.

The Sixth Circuit's decision in *Russell* weighs against allowing RBC to impose a new dispute resolution mechanism in the middle of this case. There, the Sixth Circuit affirmed the denial of Citigroup's attempt to apply a revised arbitration agreement that prohibited class actions to an existing class action. 748 F.3d at 679-80. The plaintiff had filed a class action alleging that Citigroup did not properly pay its employees. *Id.* at 679. While that case was pending, the plaintiff went back to work for the defendant and signed an employment contract that required arbitration and prohibited class actions. *Id.* Based on this new contract, Citigroup sought to compel arbitration as to the existing case. *Id.*

The Sixth Circuit's decision was based upon the fact that the text of the arbitration agreement indicated that it applied only to "disputes that 'arise between [Russell] and Citi.'" *Id.* The court found that the use of the present-tense "arise" rather than the past-tense "arose" suggested that the contract governs only disputes that begin or arise in the present or future. *Id.* Applying this reasoning here, it is clear that the February 2013 PNC Agreement does not extend to Mr. Dasher's existing claims because the new arbitration provision explicitly states that it likewise applies to a claim "which ***arises*** out of or relates to ***this*** Agreement." *See*

37

Exh. D to R. 4017-1, p. 13.  Given that Mr. Dasher's dispute arose out of or related to his RBC Agreement, the new arbitration provision does not apply.  Mr. Dasher is claiming that RBC's policies violated his legal rights, not PNC's policies after the banks merged in 2012.  *See* Complaint, ¶ 2 (R. 4007).

Furthermore, the preamble to the arbitration provision contained in the February 2013 PNC Agreement states that the arbitration provision "will apply to you and us and to your Account as of the date your account was opened (or, if you are an existing customer, ***as of the date of this Agreement***)."  *Id.* (emphasis added).  Thus, by its plain terms, the arbitration provision applies as of February 1, 2013.  RBC's suggestion to the contrary is inconsistent with the plain language of the Agreement, which governs.  *E.g.*, *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 169 (4th Cir. 2013).

In *Long v. Fidelity Water System, Inc.*, 2000 WL 989914 (N.D. Cal. May 26, 2000), the plaintiffs filed a putative class action alleging a variety of consumer fraud counts under California law, as well as violation of the federal Truth in Lending Act.  2000 WL 989914, at *1.  During the pendency of the case, the defendants, relying on the "change in terms" provision of the contract, amended the agreement to ***add*** an arbitration provision to the agreement that contained an opt-out provision.  *Id.* at *1-2.  Thereafter, the defendants asserted arbitration.  *Id.* at *2.  The court denied the defendants' motion to compel arbitration, finding:

Defendants never obtained any affirmative consent from Mr. Continolo regarding incorporation of the arbitration clause as part of the existing contract. Rather, defendants required Mr. Continolo to take affirmative action if he wished to reject the incorporation of the 1998 unilateral arbitration clause. Defendants have cited no case that has upheld an arbitration agreement based on a plaintiff's failure to "opt-out" of a defendants' unilateral imposition of an arbitration clause. The Ninth Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co. Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Mr. Continolo gave no such express, unequivocal agreement to the 1998 arbitration agreement . . . .

Defendants argue that the insertion of the arbitration clause and subsequent modification of it was authorized by the "Change of Terms" provision in Mr. Continolo's original credit card application. However, the provision is reasonably construed as allowing Household to terminate its agreement, change the credit limit or change financial terms of the account. It cannot be reasonably construed as explicitly allowing the insertion of an arbitration clause.

*Long*, 2000 WL 989914, at *2-3. The district court correctly rejected RBC's attempt to engage in similar conduct here.

In hopes of salvaging its belated and waived arbitration provision, RBC twice attempts to create authority for the proposition that a company can use a change-in-terms provision to "add an arbitration clause to a consumer agreement." In the first instance, RBC cites *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233 (11th Cir. 2012), *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012), and *Betts v. SGE Management, LLC*, 402 Fed. App'x 475 (11th Cir. 2010), for the premise that this Court "has approved a company's use of

39

change-in-terms procedures to ***add*** an arbitration clause to a consumer agreement." *See* Brief of Appellant, pp. 43-44.  None of those cases contain such a holding.

*Estate of Myhra* did not deal with adding an arbitration clause to a consumer agreement, but rather dealt with the enforceability of a forum selection clause.  695 F.3d at 1240-46.  *Pendergast* did not address whether a company could use a change-in-terms provision to add an arbitration clause to a consumer agreement that did not already contain an arbitration provision, but rather addressed whether an existing arbitration clause could be amended to insert a class action waiver.  691 F.3d at 1226-28.  *Betts* dealt with whether an arbitration agreement was illusory and, therefore, unenforceable under Texas law, not whether an arbitration clause can be added to an existing contract that contains no arbitration clause.

RBC then cites to *Snow v. Citibank, N.A.*, 2015 WL 799543 (E.D.N.C. Feb. 25, 2015), *Abdullah v. Duke University Health Sys.*, 2009 WL 1971622 (E.D.N.C. July 8, 2009), and *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C. 2000), for the premise that North Carolina federal courts "routinely enforce arbitration clauses added to contracts through change-in-terms procedures."  *See* Brief of Appellant, pp. 44-45.  Once again, none of these cases support the stated premise.

In *Snow*, the court did not address whether a defendant could add an arbitration clause to a contract that did not already contain one through the change-in-terms procedures.  The original contract between the plaintiff and defendant

40

"contained an arbitration agreement" that authorized the defendant to change the terms of the agreement at any time for any reason.  2015 WL 799543, at *2. *Abdullah* dealt with "whether an arbitration agreement that includes a provision that allows one of the parties to amend the dispute resolution procedure, constitutes an illusory promise" such that the arbitration agreement is unenforceable.  2009 WL 1971622, at *4.  *Goetsch* addressed a situation where the existing arbitration agreement that pre-dated the filing of the case was amended to remove class arbitration as an available remedy.  197 F.R.D. at 577.  Thus, like the other cases, *Goetsch* has no application here because it dealt with removing or adding terms to existing agreements to arbitrate, not adding comprehensive agreements to arbitrate to contracts that did not provide for arbitration in the first place.

RBC cites no case law to support the premise that a defendant can add an arbitration clause to a contract that does not contain one through a change-in-terms provision.  The district court correctly found that the bank could not unilaterally add an arbitration provision to the contract and then enforce it in the middle of this active litigation.

## B.    RBC's Judicial Estoppel Argument Fails.

RBC's judicial estoppel argument fails to appreciate the fundamental difference between a party using a change-in-terms provision to remove language from a contract and using a change-in-terms provision to add clauses to a contract

41

that did not previously exist.  As noted above, there is robust precedent recognizing that a party may not unilaterally ***add*** a provision to a contract that was not contemplated in the prior version of the contract.

Here, Mr. Dasher's account agreement with PNC Bank did not contain any mention of arbitration whatsoever until PNC attempted to ***add*** an arbitration clause in the February 2013 version.  Under North Carolina law, the addition of an arbitration clause is a *per se* material alteration of a contract which requires the explicit consent of both parties.  *Supak & Sons*, 593 F.2d at 136; *Frances Hosiery*, 204 S.E.2d at 842.  Mr. Dasher is entitled to argue that PNC lacked the authority to unilaterally change the contract to add arbitration.

RBC's failure to recognize the fundamental difference between removing terms from a contract and adding terms not previously contemplated does not mean that Mr. Dasher has deliberately changed his position to prevail on this issue.  Mr. Dasher is not judicially estopped from making this argument.

## CONCLUSION

The arbitration rights RBC now asserts ripened on February 1, 2013.  The bank knew about this change months prior to that date, but it never sent the new arbitration clause or an arbitration demand to Mr. Dasher's counsel.  Rather than immediately and timely assert these rights, RBC forced Mr. Dasher to litigate the issue of whether the 2012 PNC Agreement trumped the RBC Agreement as to

arbitration. Having lost that issue before the district court, this Court, and the Supreme Court, RBC next relied on the arbitration provision in the February 2013 PNC Agreement. The district court correctly found that this Court's precedent dictates that such behavior constitutes waiver.

The Court should also affirm the district court's finding, as an alternative basis for its holding, that the bank's addition of an arbitration provision to an agreement that did not previously contain arbitration was a material change that could not be made unilaterally. This is particularly true given that RBC is attempting to enforce a new arbitration clause in an ongoing case where arbitration has already been denied before the district court and on appeal.

DATED this 3rd day of February, 2016.

Respectfully submitted,

BY:   */s/ E. Adam Webb*
E. Adam Webb
  Georgia Bar No. 743910
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (facsimile)

Bruce S. Rogow
BRUCE S. ROGOW, PA
100 NE 3rd Ave., Suite 1000
Fort Lauderdale, Florida 33301
(954) 767-8909
(954) 764-1530 (facsimile)

Aaron S. Podhurst
Stephen F. Rosenthal
PODHURST ORSECK, PA
25 W. Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800
(305) 358-2382 (facsimile)

Robert C. Gilbert
GROSSMAN ROTH, PA
225 Ponce de Leon Blvd., Suite 1150
Coral Gables, Florida 33134
(305) 442-8666
(305) 285-1668 (facsimile)

44

Jeffrey M. Ostrow
Jonathan M. Streisfeld
KOPELOWITZ OSTROW PA
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, Florida 33301
(954) 525-4100
(954) 525-4300 (facsimile)

*Attorneys for Mr. Dasher*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This reply brief contains 10,737 words.

*/s/ E. Adam Webb*
E. Adam Webb

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the foregoing BRIEF OF APPELLEE upon counsel of record for Appellant by depositing one copy of same in the United States mail, postage prepaid, and addressed as follows:

Christopher S. Carver
Akerman LLP
One SE Third Avenue
25th Floor
Miami, FL 33131

Mark J. Levin
Ballard Spahr LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

In addition, I have filed same with the Court of Appeals via Federal Express and attempted to electronically file at 5:30 PM EST.

DATED this 3rd day of February, 2016.

*/s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.